UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SPRINT SPECTRUM, L.P. d/b/a/ ) | |
| SPRINT PCS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:06CV-00095 JCH |
| ) | |
| CITY OF DARDENNE PRAIRIE, ) | |
| MISSOURI ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

The matter is before the Court on Plaintiff Sprint Spectrum, L.P.'s ("Sprint") Motion for Partial Summary Judgment, filed June 26, 2006. (Doc. No. 21). The matter is fully briefed and ready for a decision.

## BACKGROUND

By way of background, Plaintiff is a wireless telecommunications service provider holding a Federal Communications Commission license to provide wireless telecommunication services within certain market areas. Defendant is a political subdivision within the state of Missouri.

In 2005, Plaintiff and St. Charles County Ambulance, owner of a parcel of land located at 1120 Feise Road, Dardenne Prairie, Missouri, and Sprint entered into a lease for Sprint to rent a portion of the aforementioned parcel. (Mot. Sum. J., Doc. No. 21 ¶ 3-4). Sprint intended to construct a 120 foot tall wireless telecommunications tower ("Tower") on the leased property. (Id. at ¶ 5). The Dardenne Prairie City Code ("City Code") treats telecommunication towers as a

conditional use[1] and imposes certain restrictions on them. Proposed telecommunication towers must meet the following requirements before a conditional use permit will be issued:

    a. The tower shall be no more than two hundred (200) feet in height.

    b. No two (2) towers shall be located within one (1) mile of each other. The distance shall be calculated from the center of the base of the tower.

    c. No tower shall be situated within five hundred (500) feet of any residential structure. The minimum setback standard from all adjoining property boundaries shall be equal to one (1) foot of setback for each foot of tower height.

    d. A determination has been made, acceptable to the City, that there are no other more suitable sites within a one (1) mile radius of the proposed tower site...

Dardenne Prairie, Mo., City Code § 405.480(4).

On August 19, 2005, Sprint applied for a conditional use permit from Defendant's Board of Aldermen asking for permission to construct the Tower. (Mot. Sum. J., Doc. No. 21 Ex. 2). Defendant's Board of Aldermen denied Plaintiff's conditional use application on December 21, 2005.[2] In a written findings of fact and conclusions of law, the Board of Aldermen explained that the proposed Tower violated the City Code's setback provision, §495.480(4)(c), because it would be located within 285 feet of a residential structure, 75 feet of the adjoining property to the west, and 15 feet of the adjoining property to the south. (Mot. Sum. J., Doc. No. 21 Ex. 4).

On May 3, 2006, Sprint filed an application for variances to rectify the setback violations.

---

[1] The City Code states that "conditional uses are those types of uses which are considered by the City to be essentially desirable, necessary or convenient to the community, but which by their nature have: ... 4) An extraordinary potential for accidents or danger to public health or safety." Dardenne Prairie, Mo., City Code § 405.455(A).

[2] A hearing was held before the Planning and Zoning Commission on October 5, 2005, and a public hearing was held before the Board of Aldermen on October 19, 2005. (Mot. Sum. J., Doc. No. 21 Ex. 4). Although the Board of Aldermen's findings state that a final vote took place on October 19, 2005, both sides admit that December 21, 2005 is when the Board of Aldermen voted to deny the conditional use permit application. (Memo. Opp'n, Doc. No. 31 ¶ 7).

(Memo Opp'n, Doc. No. 31 ¶ 10). The City Code's area variance provision states:

> Whereby reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of the adoption of this Chapter, or by reason of the exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property which conditions are not generally prevalent in the neighborhood and not created by the owner, the strict application of the area regulations of this Chapter would result in peculiar and exceptional difficulties to or otherwise pose exceptional and undue hardship upon the owner of such property, the Board of Adjustment is hereby empowered to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardships, provided such relief be granted without substantial detriment to the public good.

City Code § 405.490. On May 25, 2006, the Board of Adjustment voted to deny Plaintiff's application for variances to rectify the three setback violations.[3] (Memo Opp'n, Doc. No. 31 ¶ 12). On May 26, 2006, Plaintiff's counsel received a letter informing Sprint of the denial. (Id. at ¶ 13). The letter, written by Dardenne Prairie's city engineer, stated: "This letter will serve as notification that the Broad of Adjustment for the City of Dardenne Prairie has voted to deny the following variance request at their meeting on May 25, 2006 [recitation of Plaintiff's variance request]. A copy of the Board of Adjustment's findings will be sent to you under separate cover." (Mot. Sum. J., Doc. No. 21 Ex. 7).

On January 19, 2006, Plaintiff brought this suit alleging, *inter alia*, that the Defendant's denial of its conditional use permit application violated the Federal Telecommunications Act of 1996 ("TCA"). (Compl., Doc. 1). Plaintiff amended its Complaint on June 26, 2006, additionally alleging that rejection of its variances application violated the TCA. (Am. Compl., Doc. No. 20). It also filed this Motion for Partial Summary Judgment on the same day. (Mot. Sum. J., Doc. No. 21). On June 29, 2006 Defendant, through its Board of Adjustment (the "Board"), issued written findings of fact

---

[3]A public hearing on the matter took place the same night.

and conclusions of law regarding the variances application.[4] (Memo. Opp'n, Doc. No. 31 Ex. 3). The Board found that Sprint failed to present any evidence regarding the lack of alternative sites, lack of alternative means of filling gaps in coverage, or lack of viable telecommunication alternatives. (Id. at Ex. 3). It also found granting the variances application "would not result in substantial justice to all." (Id.).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

---

[4]Defendant implies that the findings did not issue until June 29, 2006 because it did not receive a copy of the transcript from the May 25, 2006 hearing until June 23, 2006. (Memo. Opp'n, Doc. No. 31 Ex. 1).

4

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

The TCA's goal is "to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." Indep. Wireless One Corp. v. Town of Charlotte, 242 F. Supp. 2d 409, 414 (D. Vt. 2003) (quoting H.R. Conf. Rep. No. 104-458, at 206 (1996)). Congress intended the TCA as "a deliberate compromise between two competing aims-to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." Town of Amherst v. Omnipoint Communications Enters., Inc., 173 F.3d 9, 13 (1st Cir. 1999). For purposes of this motion, the TCA has two relevant provisions. First, it requires:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

47 U.S.C. § 332(c)(7)(B)(v). Second, it requires "any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). This provision's purpose is to permit "a reviewing court to ascertain the rationale behind a denial so that it can determine if that denial comports with" the TCA's

5

requirements. W. PCS II Corp. v. Extraterritorial Zoning Auth., 957 F. Supp. 1230, 1236 (D. N.M. 1997).

Sprint argues that the denial of both the conditional use permit application and the variances application violated the TCA. The Court will first examine the variance application's denial. Sprint contends that the letter sent on May 26, 2006 constituted the written denial of its variances application, in violation of the TCA's "in writing" requirement. Alternatively, Sprint argues that Defendant's delay in issuing written findings until June 29, 2006, after the commencement of litigation, violated the TCA's "in writing" requirement. After a discussion of the relevant case law, the Court will discuss each writing in turn.

When interpreting statutory law, a federal court's objective "is to give effect to the intent of Congress." United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000). Analysis of a statute must begin with the plain language, and if it is unambiguous, "that language is conclusive absent legislative intent to the contrary." In re M & S Grading, Inc., 457 F.3d 898, 901 (8th Cir. 2006). Courts must interpret a statute "as a symmetrical and coherent regulatory scheme" and "fit, if possible, all parts into an harmonious whole." Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33 (2000) (internal citations omitted); see Erlenbaugh v. United States, 409 U.S. 239, 244 (1972) (individual sections of a single statute should be construed together). Finally, statutes should be construed as a whole and courts should not interpret one provision "in a manner that renders other sections of the same statute inconsistent." Cody v. Hillard, 304 F.3d 767, 776 (8th Cir. 2002).

The Eighth Circuit has not interpreted the meaning of "in writing" under the TCA; the phrase, however, has received a variety of interpretations in other circuits. See New Par v. City of Saginaw, 301 F.3d 390, 395 (6th Cir. 2002) (examining the split of authority and collecting cases);

Southwestern Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 59-60 (1st Cir. 2001) (examining the split of authority). At one extreme, the Fourth Circuit has held that stamping the word denial on the transcript from an oral argument fulfills the "in writing" requirement. AT & T Wireless PCS, Inc. v. City Council, 155 F.3d 423, 429 (4th Cir. 1998); accord AT & T Wireless PSC, Inc. v. Winston-Salem Zoning Bd. of Adjustment, 172 F.3d 307, 312-13 (4th Cir. 1999). At the other extreme, some district courts have held that "a local zoning authority must issue a decision in writing setting forth the reasons for the decision and linking its conclusions to evidence in the record." Omnipoint Communications, Inc. v. Planning & Zoning Comm'n, 83 F. Supp. 2d 306, 309 (D. Conn. 2000); accord Omnipoint Communications, Inc. v. Planning & Zoning Comm'n, 156 F. Supp. 2d 212, 221 (D. Conn. 2001); Ill. RSA No. 3, Inc. v. County of Peoria, 963 F. Supp. 732, 743 (C.D. Ill. 1997) (similar standard). The First, Sixth, and Ninth Circuits have concluded that a middle position "ultimately strikes the most reasonable balance between the text of the [TCA] and the practical requirements of meaningful judicial review." See MetroPCS, Inc. v. City & County of San Francisco, 400 F.3d 715, 721-23 (9th Cir. 2005) (adopting standard); see New Par, 301 F.3d at 395-96 (adopting standard); Todd, 244 F.3d at 60 (creating standard). This middle approach requires that a writing must "(1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons." MetroPCS, Inc., 400 F.3d at 722; see also USOC of Greater Iowa, Inc. v. City of Bellevue, 279 F. Supp. 2d 1080, 1084-85 (D. Neb. 2003) (applying this standard). The Court finds the reasoning of the First, Sixth, and Ninth Circuit persuasive and adopts that approach.

The time within which a municipality must issue its written decision raises an additional issue

under the TCA. When read together, § 332(c)(7)(B)(iii) and § 332(c)(7)(B)(v) require denials to be made in writing within thirty days of a final decision. See also Food & Drug Admin., 529 U.S. 120 at 132-33; Erlenbaugh, 409 U.S. at 244. Otherwise an incongruity arises wherein a wireless provider must file suit in thirty days, but the municipality is not required to inform the wireless provider why its request to build a tower was denied. This situation fails to foster a "symmetrical and coherent regulatory scheme." Food & Drug Admin., 529 U.S. 120 at 132-33.

Additionally, permitting a municipality to render its written decision more than thirty days after taking final action[5] is problematic for four reasons. First, it precludes the plaintiff from attempting to remedy the concerns of the zoning authority without resort to litigation. See Sprint Spectrum L.P. v. County of Saint Charles, No. 4:04CV1144RWS, 2005 WL 1661496, at *4 (E.D. Mo. July 6, 2005) (unpublished opinion) (holding a written decision sent sixty-five days after the denial cannot be treated as "in writing" for purposes of the Act).[6] Second, delayed findings create reliability concerns about the explanations contained therein. See Va. Metronet, Inc. v. Bd. of Supervisors, 984 F. Supp. 966, 973 (E.D. Va. 1998) (issuance of findings thirty four days after denial and six days after commencement of litigation "strongly suggests that [the findings are] pretextual."). These concerns not only prevent the Court from "expeditiously addressing the case" but also impair the Courts' ability to "accurately analyze the existence and validity of substantial evidence." Sprint Spectrum, 2005 WL 1661496. at *4-5; see also Va. Metronet, 984 F. Supp. at 973

---

[5]To be clear, the Board's roll call vote is its final decision. See USOC of Greater Iowa, 279 F. Supp. 2d. at 1083, 85 (treating a roll call vote, without more, as a final decision); Va. Metronet, Inc., 984 F. Supp. at 970 (same).

[6]That the defendant in Sprint Spectrum delayed a month longer than did the Board here in issuing its findings simply means the delay in Sprint Spectrum was more egregious; it does not detract from that case's persuasive reasoning and almost identical factual circumstances

8

(findings issued after commencement of litigation suggest an intent to prevent the Court from engaging in meaningful substantive review). Third, the evasion of expeditious substantive review is contrary to Congress' intent to have a "pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment" of wireless services <u>Indep. Wireless One Corp.</u>, 242 F. Supp. 2d at 414 and to "hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v). Finally, it improperly allows the municipality to avoid its statutory duty to issue written findings because the municipality can wait and see if the telecommunication provider will even file suit; thus, the municipality has to fulfill its statutory obligations only when its decisions are challenged. This scenario is not what Congress envisioned when it created the TCA.

The May 26, 2006 letter does not fulfill the "in writing" requirement because it fails the First, Sixth, and Ninth Circuit's thee prong test. Although the letter meets the test's first prong by being a writing separate from the record, it clearly fails the second and third prongs of the test. Specifically, the letter listed no reasons for the denial. It contained only a short statement informing the Plaintiff of the denial and stating that findings would be sent under separate cover. This conclusory statement neither describes nor explains the reasons for the variance application's denial; accordingly, it fails the second and third prongs of the test.[7]

The June 29, 2006 findings, which the Board issued thirty-five days after the May 25, 2006 vote and three days after Sprint amended its Complaint, violates the requirement of issuing findings

---

[7] An alternative ground for finding the letter did not meet the "in writing" requirement is that it was not written by the Board. One court has found the contention that a non-board member can render a written decision "meritless." <u>Va. Metronet v. Bd. of Supervisors</u>, 984 F. Supp. 966, 972 (E.D. Va. 1998). Here, the city engineer, not a Board member, wrote the letter. Although <u>Virginia Metronet</u> presented a slightly different factual setting, the Court agrees that the Board must render its own written decisions.

within thirty days.[8] The Board's issuance of findings after Sprint amended its Complaint raises all of the concerns discussed above. As highlighted by these concerns, the delayed findings impair the Court's ability to expeditiously, effectively, and reliably provide meaningful review of whether the Board's denial was supported by substantial evidence. Additionally, the relevant precedent has found that a delay of over thirty days violates the TCA. See Va Metronet, 984 F. Supp. at 970; Sprint Spectrum, 2005 WL 1661496. at *4-5. Dardenne Prairie's only defense for this delay is that it did not receive the transcript of the May 25, 2006 hearing until Friday, June 23, 2006. The Court, however, does not find this justification a compelling reason to ignore the TCA's text and goals.[9] Thus, the Court finds that the Board violated the TCA by failing to meet the "in writing" requirement.[10]

Sprint has requested that the Court issue an injunction ordering Dardenne Prairie to grant its variance application and its conditional use permit application. An injunction is the appropriate remedy for violations of 47 U.S.C. § 332(c)(7). See New Par, 301 F.3d at 399-400 (collecting cases holding injunction is the proper remedy for a TCA violation); see also Omnipoint Corp. v. Zoning Hearing Bd., 181 F.3d 403, 410 (3d Cir. 1999) (same). Nothing in this case suggests that a remand

---

[8]Had the Board issued these findings in a timely manner, they would certainly pass the three prong test. The findings are a writing separate from the record, contains reasons for the denial, and sufficiently explain the reasons for the denial.

[9]The Board's need for the transcript does not justify the untimely issuance of its findings of fact and conclusions of law. The Board attended the meeting, had access to the variance application (a document with detailed specifications about the project), and to the City's Code.(Memo. Opp'n, Doc. No. 31 Ex. 2, 3).

[10]Because it is unnecessary to do so, the Court will not address the issue of whether the variances denial was supported by substantial evidence. Additionally, it will not reach the issues of whether the conditional use permit application's denial was "in writing" or supported by substantial evidence.

10

regarding the variance application would serve a useful purpose. See New Par, 301 F.3d at 399-400 (holding remand is not necessary when it serves no purpose). Dardenne Prairie, its citizens, and Sprint have had an opportunity to present their views at the public hearing for the variances; it seems unlikely that a rehearing would do anything more than rehash old issues and cause further delay. The Court will order Dardenne Prairie's Board of Adjustment to issue the variances requested in Sprint's application.

The issuance of the variances, however, does not permit Sprint to build its Tower. Sprint needs both a conditional use permit and variance because each addresses different zoning issues. Sprint applied for an area variance. (Reply, Doc. No. 33 at pg. 8). Area variances have "no relationship to a change in use;" rather they are grants to erect, alter, or use a structure for a permitted use in a way that violates the zoning code. 101A C.J.S. Planning & Zoning § 297. Area variances usually involve setbacks, frontage requirements, and yard requirements. Id. Conditional use permits address whether or not a certain use will be permitted at all on a parcel. For example, conditional use permits usually involve whether a parcel can be used for a desirable, but hazardous use such as junk yards, telecommunication towers, quarries, or drive-in theaters. Sprint readily admitted in its variance application that it would still need a conditional use permit. (Mot. Sum. J., Doc. No. 21 Ex. 5). The City Code does not contain any provision warranting a different conclusion. Accordingly, Sprint must also receive a conditional use permit from the Dardenne Prairie Board of Aldermen before it can construct its Tower.

The Court, however, believes a remand to Defendant's Board of Aldermen for a rehearing on the conditional use permit serves no purpose. The Defendant's only basis for denying the conditional use permit application was that the Tower violated the setback requirements. Following

this ruling, the setback violations no longer exist. Furthermore, Dardenne Prairie, Sprint, and the public had an opportunity to present their views at a public hearing for the conditional use permit; it seems likely that further hearings would merely rehash old issues. Thus, no grounds exist for the denial of the conditional use permit, and a remand would only cause further delay. The Court will order the Dardenne Prairie Board of Aldermen to issue Plaintiff the conditional use permit.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Sprint Spectrum's Motion for Partial Summary Judgment (Doc. No. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Dardenne Prairie's Board of Adjustment will issue Plaintiff Sprint Spectrum variances in accordance with its application dated May 3, 2006.

**IT IS FURTHER ORDERED** that Defendant Dardenne Prairie's Board of Aldermen will issue Plaintiff Sprint Spectrum a conditional use permit in accordance with its application dated August 19, 2005.

**IT IS FURTHER ORDERED** that all pending motions (Doc. No. 26) are **DENIED** as moot. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 19th day of September, 2006.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE